UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARNELL GOODWIN,

                Petitioner,

v.                                    Case Number: 08-CV-13820
                                    Honorable Marianne O. Battani

BARRY DAVIS,

                Respondent.

_____/

## OPINION AND ORDER
## (1) GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT THEREBY DISMISSING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND (2) DECLINING TO ISSUE PETITIONER A CERTIFICATE OF APPEALABILITY AND AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Before the Court is Respondent's "Motion for Summary Judgment" regarding Petitioner Charnell Goodwin's habeas-corpus petition. (Dkt. # 9.) On September 5, 2008, Petitioner, a state inmate currently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, filed his *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. (Dkt. # 1.) Respondent did not file an answer to Petitioner's petition. Rather, Respondent filed a motion for summary judgment, arguing that Petitioner's petition was not timely filed under 28 U.S.C. § 2244(d)(1). Petitioner replied to Respondent's motion on April 17, 2009, conceding that his petition was filed outside the statute of limitations period, but that pursuant to *Jimenez v. Quarterman*, __ U.S. __,

129 S.Ct. 681, 686 (2009), his petition should be considered timely, or, in the alternative, this Court should invoke the doctrine of equitable tolling.  (Dkt. # 12.)

For the reasons stated below, the Court grants Respondent's motion for summary judgment, thereby dismissing Petitioner's petition.  The Court also declines to issue Petitioner a certificate of appealability and an application for leave to proceed on appeal *in forma pauperis*.

## I. BACKGROUND

Petitioner's troubles in this case began on January 20, 1990, when Anthony Jackson, the complainant in this case, and several of his companions were leaving a party at Petitioner's aunt's house.  One of Jackson's companions made a remark about shooting up the house.  The remark was overheard by Petitioner.  Upon hearing that, Petitioner ran after the boys, caught Jackson and struck him in the head with the gun that he was carrying; Petitioner admitted that when he had the victim by his arm, he hit him with the gun, and the gun accidentally went off.  The young man, only fourteen-years old, was critically injured; traumatic brain injury, with paralysis on his right side.

Petitioner pleaded guilty to assault with intent to murder, MICH. COMP. LAWS § 750.83, and felony firearm, MICH. COMP. LAWS § 750.227BA, in Detroit, Michigan's Recorder's Court, after extensive plea negotiations, which resulted in a sentencing agreement "for two years on the felony firearm as mandated by law, and a life sentence on the assault with intent to murder charge.  The People further agree not to bring a homicide charge against the defendant if the victim in this case should die."  (Plea Hr'g

2

Tr., 2-3, Feb. 23, 1990.)  The following colloquy took place between the trial judge and

Petitioner:

> THE COURT:  Mr. Goodwin, how old are you, sir?
> DEFENDANT GOODWIN: Nineteen.
> THE COURT:  Nineteen.  Mr. Goodwin, you understand the charge in this case is assault with intent to murder -- that carries anything up to life in prison -- and felony firearm, that's a mandatory two years.  And there is no reduced plea offer, and there is a sentence agreement of the straight life on the assault with intent to murder, plus the two years on the felony firearm that the Prosecutor is offering, also with an agreement not to prosecute any further any homicide charges should the victim in this case end up dying.
> Do you understand that -- the charges, the possible penalties, and the agreement of everybody involved?  Do you understand that now –
> DEFENDANT GOODWIN: Yes.
> THE COURT:  -- as I've just repeated it?
> All right.  And you've talked that over with Mr. Henry, as he's indicated.  He tells me you want to take advantage of that.  Is that what you want to do, sir?
> DEFENDANT GOODWIN:  Yes.
> THE COURT:  Do you plead guilty to assault with intent to murder?
> DEFENDANT GOODWIN:  Yes.
> THE COURT:  Do you plead guilty to having a firearm in your possession at the time of committing this assault?
> DEFENDANT GOODWIN:  Yes.
> THE COURT:  All right.  Has anybody threatened you or forced you to plead guilty, Mr. Goodwin?
> DEFENDANT GOODWIN:  No.
> THE COURT:  Anybody promise you anything other than what we've been talking about right here in open court?
> DEFENDANT GOODWIN:  No.
> THE COURT:  Are you pleading guilty then, Mr. Goodwin, because you are guilty?
> DEFENDANT GOODWIN:  Yes, sir.
> THE COURT:  And are you pleading guilty freely and voluntarily?
> DEFENDANT GOODWIN:  Yes, sir.
> THE COURT:  And you understand what you're doing here this morning, sir?
> DEFENDANT GOODWIN:  Yes, sir.

3

THE COURT:  All right. Mr. Goodwin, by pleading guilty now, you're waiving -- that means you're going to give up your right to either a jury trial or a trial by a judge without a jury.  If you went to trial, you wouldn't have to take the witness stand at that trial to testify unless you wanted to, and neither the judge nor the jury could hold it against you if you remained silent and didn't testify.  And if you went to trial, you would be presumed innocent, and the Prosecutor would have to prove you guilty beyond a reasonable doubt.

Do you understand those rights?

DEFENDANT GOODWIN:  Yes, sir.

THE COURT:  And you understand that by pleading guilty you're giving up those rights?

DEFENDANT GOODWIN: Yes.

THE COURT: Mr. Goodwin, if you had a trial, you would have a right to have all the witnesses against you appear here in open court.  You would have a right to question them and cross-examine them through your lawyer, Mr. Henry. And if you had a trial and you had witnesses of your own, you could bring your own witnesses to court, and this Court would compel those witnesses to come to court to testify for you.

Do you understand those rights?

DEFENDANT GOODWIN:  Yes.

THE COURT:  And you understand that by pleading guilty, you're giving up those rights also?

DEFENDANT GOODWIN:  Yes.

THE COURT:  All right.  The Information I have in this file is that this offense occurred on January 20th of this year, 1990, over at an address on Glendale here in the City of Detroit.  Is that correct?

DEFENDANT GOODWIN:  Yes.

THE COURT:  Were you over there at that address?

DEFENDANT GOODWIN:  Yes.

THE COURT:  Did you have a weapon with you?

DEFENDANT GOODWIN:  Yes.

THE COURT:  What kind of weapon was that?

DEFENDANT GOODWIN:  A thirty-two.

THE COURT:  A thirty-two.  Was that a pistol or -- pardon me?

DEFENDANT GOODWIN:  Yes.

THE COURT:  All right.  What did you do with that pistol?

DEFENDANT GOODWIN:  I hit somebody, and it went off.

THE COURT:  The gun went off?

DEFENDANT GOODWIN:  Yes.

THE COURT:  Did you point it at somebody to shoot somebody?

4

        DEFENDANT GOODWIN:  No.
        THE COURT:  Well, you didn't then?
        DEFENDANT GOODWIN:  Yes. I would say yes.
        THE COURT:  Pardon?
        DEFENDANT GOODWIN:  Yes.
        THE COURT:  You did?
        DEFENDANT GOODWIN:  Yes.
        THE COURT:  All right.  And when you shot it, did you intend to
kill that person when you shot him?
        DEFENDANT GOODWIN:  Yes.

* * *

        THE COURT:  All right.  I'll accept the plea of guilty. . . .

(Plea Hr'g Tr., 5-9, Feb 23, 1990.)

Subsequent to the plea hearing, on March 7, 1990, Petitioner was sentenced,

pursuant to the sentencing agreement, to life imprisonment, with the chance of parole, for

the assault-with-intent-to murder conviction, and the mandatory two-years imprisonment

for the felony-firearm conviction.

Following his sentencing, Petitioner filed a motion to withdraw his guilty plea, on

the basis that his plea was illusory.  It was Petitioner's position that he was led to believe

that the person that he shot was going to die–that the respirator was going to be turned

off–and that he would then be charged with first-degree murder.  The trial court denied

the motion.  (Motion Hr'g Tr., 16, Mar. 7, 1990.)


Subsequently, Petitioner, through counsel, filed his appeal as of right with the

Michigan Court of Appeals, raising the following claims: (1) that the plea was induced by

5

an illusory plea bargain, and, (2) that his sentence was disproportionate.  On November 20, 1992, the Michigan Court of Appeals issued an opinion affirming Petitioner's conviction and sentence.  *People v. Goodwin*, No. 128696 (Mich.Ct.App. Nov. 20, 1992).

Thereafter, Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court.  On February 25, 1994, the Michigan Supreme Court, pursuant to *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973), issued an order remanding the case to the trial court, in order to determine whether Petitioner received ineffective assistance of counsel.  *People v. Goodwin*, No. 95564 (Mich. Feb. 25, 1994).  The Michigan Supreme Court stated in pertinent part:

> Trial counsel advised defendant to accept a plea and sentencing agreement of life imprisonment for assault with intent to commit murder solely on the prospect that defendant might have faced first-degree murder charges, *if* the victim had died.  Defendant asserts he was falsely led to believe the victim was near death.  He pled guilty to the maximum possible offense and received a life sentence under the plea bargain, which substantially exceeded the sentencing guideline range of 96 to 180 months. There is reason to suspect, therefore, that the plea bargain may have been illusory.  However, since no *Ginther* hearing was conducted, the record is inadequate for review of defendant's claims.
>
> If the trial court on remand finds that trial counsel was ineffective in advising defendant to accept the plea and sentencing agreement, defendant shall be allowed to withdraw his guilty plea.

*Goodwin*, No. 95564, slip op. at 1.


Following the *Ginther* hearing on remand, the trial court denied Petitioner's motion to withdraw his guilty plea.

Subsequently, Petitioner filed a claim of appeal with the Michigan Court of

6

Appeals, contending that the trial judge should have granted his motion to withdraw his

plea.  On December 1, 1995, the Court of Appeals issued an opinion affirming

Petitioner's sentence.  *People v. Goodwin*, No. 182849 (Mich.Ct.App. Dec. 1, 1995).  The

Court of Appeals stated:

> Defendant's sole contention on appeal is that the trial court should
> have granted his motion to withdraw his plea because of ineffective
> assistance of counsel.  We disagree.  To prevail on a claim of ineffective
> assistance of counsel, a defendant must first show that counsel's
> performance was deficient and that, under an objective standard of
> reasonableness, counsel made an error so serious that counsel was not
> functioning as an attorney as guaranteed under the Sixth Amendment of the
> United States Constitution.  Second, the alleged deficiency must be
> prejudicial to the defendant.  When reviewing a claim of ineffective
> assistance arising out of a guilty plea, courts must determine whether the
> defendant tendered a plea voluntarily and understandingly.

> Here, defendant admitted to the police that on January 20, 1990, he
> struck the complainant with a gun, but stated that the shooting was
> accidental.  By the time that defendant made his plea on February 23, 1990,
> the complainant's condition had stabilized.  Ten days before the plea was
> tendered, the complainant had been transferred from Henry Ford Hospital to
> Children's Hospital.  Nevertheless, the prosecutor informed defendant that
> the complainant was near death.  If the complainant died, the prosecutor
> planned to charge defendant with first-degree murder.  Defendant contends
> that his counsel should have made a more thorough investigation into the
> condition of the complainant.

> Defendant has not shown that counsel made an error so serious that
> counsel was not functioning as the counsel guaranteed by the Sixth
> Amendment.  This was not an illusory plea bargain.  The Sixth Amendment
> does not require counsel to gather up-to-the-minute medical information on
> the victim of a crime.  Given the fact that the complainant was shot in the
> head point-blank, defendant continues to receive the benefit of his plea to
> this day.

> In addition, nobody could have known at the time of the plea
> whether complainant would live or die.  The complainant was in the

7

Intensive Care Unit from January 21, 1990, until February 1, 1990.  When the complainant was transferred out of the ICU, "he was basically unresponsive to verbal commands."  Even when he was transferred to the Children's Hospital on February 13, 1990, the complainant had "no purposeful neurological function."  The complainant did not become ambulatory until seven months after defendant made his plea.  The fact that the complainant made a miraculous recovery does not negate the voluntary and understanding nature of defendant's plea at the time it was made.  The trial court did not err in denying defendant's motion.

*Goodwin*, No. 182849, slip op. at 1 (citations omitted).

Petitioner then filed a delayed application for leave to appeal from that decision with the Michigan Supreme Court.  On September 27, 1996, the Michigan Supreme Court issued an order denying Petitioner's application.  *People v. Goodwin*, 453 Mich. 896, 554 N.W.2d 315 (1996).

Then, more than ten years later, on January 12, 2007, Petitioner filed a motion for relief from judgment, pursuant to M.C.R. 6.500 *et. seq*., with the trial court.  On February 7, 2007, the trial court denied the motion.  *People v. Goodwin*, No. 90-001369-01 (Wayne County Circuit Court, Feb. 7, 2007).

He then filed a delayed application for leave to appeal from that decision with the Michigan Court of Appeals.  The Court of Appeals denied the application. *People v. Goodwin*, No. 276338 (Mich.Ct.App. June 21, 2007).

Petitioner filed his application for leave to appeal with the Michigan Supreme Court.  It was denied on January 11, 2008 "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Goodwin*, 480 Mich. 1018, 743 N.W.2d 60 (2008).  Justice Kelly, with Justice Cavanagh joining,

8

dissented and stated:

> Defendant pleaded guilty of assault with intent to murder and possession of a firearm during the commission of a felony. He was sentenced to life in prison, with the possibility of parole, for the assault conviction. In this motion for relief from judgment, defendant challenges the legitimacy of that sentence in light of the current Michigan Parole Board's "life means life" policy. In *Foster-Bey v. Rubitschun*, Judge Marianne O. Battani of the United States District Court for the Eastern District of Michigan held that changes made to Michigan's parole law and polices in 1992 and 1999 violated the Ex Post Facto Clause of the United States Constitution. For the reasons discussed in my dissenting statement in *People v. Scott*, 480 Mich. 1019, 743 N.W.2d 62, 2008 WL 109682 (2008), I believe the Court should grant leave to appeal in this case as well as in *Scott* to consider the jurisprudentially significant issues raised in the *Foster-Bey* decision.

*Id.* (footnotes omitted).

On September 5, 2008, Petitioner filed his pending petition for a writ of habeas corpus. The petition was signed and dated August 25, 2008.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the Act's effective date, April 24, 1996, and imposes a one-year limitations period for habeas-corpus petitions. 28 U.S.C. § 2244(d)(1); *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007), *cert. denied*, --- U.S. ----, 128 S.Ct. 1236, 170 L.Ed.2d 81 (2008). Petitioner's application for habeas-corpus relief was filed after April 24, 1996, and thus, the provisions of the AEDPA, including the limitations period for filing an application for

9

habeas-corpus relief, apply to his application. *Lindh v. Murphy*, 521 U.S. 320, 337

(1997).

Title 28 of the United States Code, sections 2244(d)(1)(A) through (D) state

in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;

> > (C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> > (D) the date on which the factual predicate of the claim or claims presented could have been

discovered through the exercise of
due diligence.

Concerning § 2244(d)(1)(A) and a direct appeal from state court, the one-year statute of limitations does not begin to run until the day after the petition for a writ of certiorari was due in the Supreme Court. *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000). Under Rule 13 of the Supreme Court Rules, a petition for a writ of certiorari "is timely when it is filed with the Clerk of this Court within 90 days after entry of judgment." SUP.CT.R.13. However, case law provides that where a newly-enacted statute of limitations shortens the time for filing suit, a party against whom the limitations period has already run when the statute becomes effective must be given a reasonable time to file suit. The Sixth Circuit has held that it is reasonable to allow a litigant the benefit of the full one-year limitations period. *Searcy v. Carter*, 246 F.3d 515, 517 (6th Cir. 2001).

Additionally, under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending tolls any period of limitation contained in the statute. A post-conviction relief petition is "properly filed" under the statute if it meets the applicable state rules governing filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Tolling is effective only when collateral review is properly sought within the limitations period. *Id.*

Concerning a petition for state post-conviction relief, the one-year statute of

11

limitations is tolled during the time period between the state appellate court's decision and the state supreme court's decision concerning the petition.  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Matthews v. Abramajtys*, 319 F.3d 780, 787-88 (6th Cir. 2003). However, a properly filed application for state post-conviction relief, while tolling the statute of limitations, does not start a new limitations period.  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).  The United States Supreme Court has held that, after completion of state-court-collateral review, the statute of limitations is not tolled during the pendency of a certiorari petition in the United States Supreme Court seeking review of the denial of state post-conviction relief.  *Lawrence v. Florida*, 549 U.S. 327, 329 (2007).

### III.  DISCUSSION

#### A.  Timeliness of Petition

In this case, Petitioner did not file his application for a writ of habeas corpus within the statute of limitations; Petitioner's delayed application for leave to appeal, following remand for a *Ginther* hearing, was denied on September 27, 1996. Petitioner then had ninety days from the Michigan Supreme Court's order denying his delayed application in which to seek a writ of certiorari with the United States Supreme Court. Thus, for purposes of the statute of limitations, Petitioners' convictions became final on December 26, 1996.  Against that backdrop, Petitioner then had until December 26, 1997, in which to file his habeas petition, excluding any time during which a properly filed application for state post-conviction relief was pending.

12

Here, the record reveals that Petitioner filed his motion for state post-conviction relief with the trial court on January 12, 2007, a little over nine years after the limitations period had expired.  In its opinion and order denying that motion, the trial court made reference to a motion for relief from judgment being filed in June 1999: "In June 1999, the Defendant filed a pro per Motion for Relief from Judgment (MRJ).  For reasons not entirely clear to this Court, this motion was held in abeyance."  *Goodwin*, No. 90-001369-01, slip op. at 2.

Even if the Court were to assume that a motion for relief from judgment was indeed filed in June 1999, the filing of such a motion would still be outside of the limitations period by approximately eighteen months.  A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.  *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003).

In this case, Petitioner's state post-conviction proceedings did not toll the running of the statute of limitations.  The AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings.  *See Searcy*, 246 F.3d at 519.  And, furthermore, Petitioner's habeas petition, dated August 25, 2008, was filed with this Court on September 5, 2008, almost eleven years after the expiration of the applicable one-year statute of limitations.  Thus, the untimely filing of Petitioner's post-conviction motion did not toll or restart the running of the statute of limitations period.  Consequently, the Court finds that Petitioner is barred from habeas relief by the untimely

13

filing of his petition as set forth in 28 U.S.C. § 2244(d).

However, Petitioner contends that the doctrine of equitable tolling should apply on the basis of (1) *Jimenez*, *supra*, and (2) because he is actually innocent of the crime charged.

## B.  Equitable Tolling

The United States Supreme Court has not yet decided whether the statute of limitations for habeas actions is subject to equitable tolling.  *Pace v. DeGuglielmo*, 544 U.S. 408, 418 n. 8 (2005).  However, most circuits, including the United States Court of Appeals for the Sixth Circuit, have determined that the one-year limitations period can be subject to equitable tolling.  *See Griffin v. Rogers*, 308 F.3d 647, 652 (6th Cir. 2002).  The applicability of equitable tolling on grounds of actual innocence is likewise undecided by the Supreme Court but recognized by the Sixth Circuit.  *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005).  Although the Supreme Court has not considered the question of equitable tolling in habeas cases, it has determined that, if equitable tolling is available in habeas challenges to state-court convictions, a litigant must show (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way.  *Pace*, 544 U.S. at 418.

In *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001), the Sixth Circuit held that the test to determine whether equitable tolling of the habeas limitations period is appropriate is the five-factor analysis set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). The factors which the Court is to consider are:

14

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap*, 250 F.3d at 1008.  "[T]hese factors 'are not necessarily comprehensive or always relevant; ultimately every court must consider an equitable tolling claim on a case-by-case basis.'"  *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005) (quoting *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004)).  "In essence, the doctrine of equitable tolling allows federal courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'"  *Keenan*, 400 F.3d at 421 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)); *see Pace*, 544 U.S. at 418. The Sixth Circuit has repeatedly cautioned that equitable tolling should be granted "sparingly."  *Keenan*, 400 F.3d at 420 ("Equitable tolling is permissible under the [AEDPA], although rare.") (Citation omitted).  A petitioner has the burden of demonstrating that he is entitled to equitable tolling.  *Griffin*, 308 F.3d at 653.

Ignorance of the law, illiteracy, and lack of legal assistance do not amount to grounds for equitable tolling.  *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling."); *Cobas v. Burgess*, 306 F.3d 441, 444

15

(6th Cir. 2002) (Inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations).

The Sixth Circuit has held that a credible claim of actual innocence may equitably toll the one-year statute of limitations set forth at 28 U.S.C. § 2244(d)(1). *Souter*, 395 F.3d at 588-90.  As the *Souter* Court explained, where a petitioner, in order to support a claim of actual innocence in a collateral proceeding "can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." *Souter,* 395 F.3d at 602.  A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Here, Petitioner has failed to establish that he is entitled to equitable tolling.

First, Petitioner alleges that the state created an impediment to the filing of his habeas petition by holding his original motion for relief from judgment, allegedly filed in June 1999, in abeyance.  However, even if the Court were to consider Petitioner's argument, that argument fails because that motion was filed almost two years after the limitations period had expired.  Furthermore, the Court finds that Petitioner has also

16

failed to establish that he diligently pursued his rights, given that he filed his second motion for relief from judgment, dated January 12, 2007, a little more than nine years after the limitations period had expired, and subsequently, Petitioner waited over seven months after denial of his post-conviction relief to file this habeas action.

Second, Petitioner is also not entitled to equitable tolling under *Souter*, as he has neither alleged nor met the stringent standard for establishing a credible claim of actual innocence. Moreover, any actual exception to the statute of limitations is inapplicable in light of the fact that Petitioner pleaded guilty to the charge that he challenges in his petition. *See Reeves v. Cason*, 380 F.Supp.2d 883, 885 (E.D. Mich. 2005).

Even if Petitioner's claim were considered, tolling on an assertion of actual innocence is not warranted. In support of his position, Petitioner presents the following evidence: (1) his own affidavit; (2) the affidavit from his then-girlfriend, who was a witness to the shooting and now claims that her statement to the police was coerced and made out of fear of being charged as an accessory; and (3) a summary of the polygraph examinations of himself and his then-girlfriend. Petitioner presented this evidence to the trial court in this motion for relief from judgment, which the trial court denied.

This Court finds that the trial court's rejection of Petitioner's claim was correct. Petitioner did not deny committing the acts that gave rise to his conviction; he admitted to shooting the victim. Furthermore, Petitioner has not submitted any new evidence that would demonstrate to the Court that he is actually innocent of the charge.

17

The Court therefore finds that Petitioner is not entitled to habeas relief on an actual innocence claim.

Finally, Petitioner also argues that *Jimenez, supra*, applies to his case. In *Jimenez*, the United States Supreme Court held that a late round of appellate review by a state court did not preclude habeas review where the state grants a criminal defendant the right to file an out-of-time collateral review. The Supreme Court reasoned that a Petitioner's conviction is not "final" for purposes of § 2244(d)(1)(A) until the conclusion of the out-of-time direct appeal has expired. *Jimenez*, __ U.S. __, 129 S.Ct. at 686. However, this Court finds that Petitioner misconstrues the holding in the *Jimenez* case.

The facts in *Jimenez* are as follows: After the petitioner was sentenced for burglary, his attorney filed an appellate brief with the Texas Court of Appeals, explaining that he was unable to identify any nonfrivolous ground on which to base an appeal. He left a copy of the brief and a letter (advising the petitioner of his right to file a *pro se* brief) at the county jail, where he believed the petitioner to be. The petitioner, however, had been transferred to a state facility and did not receive the delivery. The Texas Court of Appeals dismissed the appeal, and served the petitioner with notice of the dismissal at the county-jail address that, again, was the wrong address.

The petitioner in *Jimenez* eventually learned that his appeal had been dismissed. He then filed an application in state court for a writ of habeas corpus, arguing that he was denied his right to a meaningful appeal when he was denied the opportunity to file a *pro se* brief. The Texas Court of Criminal Appeals agreed and granted him the right

18

to file an out-of-time appeal.  The petitioner thereafter filed the out-of-time appeal.  His conviction was affirmed.  The Texas Court of Criminal Appeals subsequently denied discretionary review.  The petitioner then filed a second application for a writ of habeas corpus in state court, which was denied.

Petitioner then filed a federal petition for a writ of habeas corpus.  He relied on 28 U.S.C. § 2244(d)(1)(A), which provides "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" as the trigger for AEDPA's one-year limitations period.  He argued that his judgment  became final when time expired for seeking certiorari review of the decision in his out-of-time appeal.  Until that date, he argued, direct review of his state-court conviction was not complete.

The district court disagreed with the petitioner in *Jimenez* and dismissed the federal habeas petition as time barred.  In the district court's view, the proper start date for AEDPA's one-year limitations period was when time for seeking discretionary review of the decision in the petitioner's first direct appeal expired.  The district court concluded that it could not take into account the Texas court's later decision reopening the petitioner's direct appeal because circuit precedent established that AEDPA provided for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between.

The United States Supreme Court disagreed with the district court, stating:

> With respect to post[-]conviction relief for federal

19

prisoners, this Court has held that the conclusion of direct review occurs when "this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari." *Id.*, at 527, 528-532, 123 S.Ct. 1072 (interpreting § 2255, ¶ 6(1)). We have further held that if the federal prisoner chooses not to seek direct review in this Court, then the conviction becomes final when "the time for filing a certiorari petition expires." *Id.*, at 527, 123 S.Ct. 1072. In construing the similar language of § 2244(d)(1)(A), we see no reason to depart from this settled understanding, which comports with the most natural reading of the statutory text. *See Lawrence v. Florida*, 549 U.S. 327, 332-335, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (citing *Clay*, *supra*, at 528, n. 3, 123 S.Ct. 1072). As a result, direct review cannot conclude for purposes of § 2244(d)(1)(A) until the "availability of direct appeal to the state courts," *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994), and to this Court, *Lawrence*, *supra*, at 332-333, 127 S.Ct. 1079, has been exhausted. Until that time, the "process of direct review" has not "com[e] to an end" and "a presumption of finality and legality" cannot yet have "attache[d] to the conviction and sentence," *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

\* \* \*

Our decision today is a narrow one. We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet "final" for purposes of § 2244(d)(1)(A). In such a case, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal . . . .

*Jimenez*, ___U.S. at ___, 129 S.Ct. at 685-687.

This case is distinguishable from *Jimenez*, as Petitioner was not granted the

20

right to file an out-of-time direct appeal.  Petitioner attempts to argue that because his

post-conviction motion for relief was, for reasons unknown to the Court, stayed, that stay,

or the additional time in which the trial court took to rule on his collateral appeal, should

invoke the application of the rule outlined by the Supreme Court in *Jimenez* in his case.

Petitioner is mistaken in the application of *Jimenez*.  The rule in *Jimenez* is narrow and

deals with when a judgment is final for purposes of § 2244(d)(1)(A), and should only be

applied in cases where "a state court grants [Petitioner] the right to file an out-of-time

direct appeal during state[-]collateral review, but before [Petitioner] has first sought

federal habeas relief." *Jimenez*, ___U.S. at ___, 129 S.Ct. at 685-687.  That is not the

situation in Petitioner's case.  For the reasons stated, the Court finds that *Jimenez* is in

fact inapposite to Petitioner's case.

Against that backdrop, the Court concludes that Petitioner has not met his

burden of establishing that he is entitled to equitable tolling.  Therefore, the Court finds

that Petitioner is not entitled to habeas relief.

## C.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to

appeal the denial of a habeas petition for relief from either a state or federal conviction.

28 U.S.C. §§ 2253(c)(1)(A), (B).  A district court, in its discretion, may decide whether to

issue a COA at the time the court rules on a petition for a writ of habeas corpus or may

wait until a notice of appeal is filed to make such a determination.  *See Castro v. United

States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth*., 105 F.3d

21

1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).  In denying the habeas petition, the Court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA.  *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.)).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In this case, the Court concludes that reasonable jurists would not debate that a plain procedural bar is present requiring the dismissal of Petitioner's petition, and no certificate of appealability is therefore warranted.  Nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*.  *See* Fed. R. App. P. 24(a).

## IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that Respondent's "Motion for Summary Judgment" [dkt. # 9] is **GRANTED**, and Petitioner's "Petition for Writ of Habeas Corpus " [dkt. # 1] is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue

22

Petitioner a certificate of appealability and an application for leave to appeal *in forma pauperis*.


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


Dated: May 28, 2009



CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner and Counsel for the Respondent.

s/Bernadette M. Thebolt

Case Manager